# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RAUL RODRIGUEZ,

      Petitioner,

      v.                              Civ. No. 23-673 WJ/SCY

ATTORNEY GENERAL FOR THE
STATE OF NEW MEXICO and
GEORGE STEVENSON, Warden,

      Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This Proposed Findings and Recommended Disposition ("PFRD") addresses Petitioner Raul Rodriguez's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody." Doc. 1. The Honorable William P. Johnson referred this case to me to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. Doc. 4. Having reviewed the petition, I recommend finding that all claims, including those unexhausted or procedurally defaulted, fail on the merits. Therefore, I recommend denying this petition.

## BACKGROUND

### 1. Factual Background

To provide context regarding Mr. Rodriguez's claims, I repeat the factual background from the New Mexico Court of Appeal's order on direct appeal:

> An Albuquerque Police Department (APD) undercover narcotics team conducted a "buy-bust" operation at a 7-Eleven convenience store. In a typical "buy-bust" operation, an undercover detective purchases drugs from an individual and that individual is then arrested immediately after the drugs are purchased. During this particular "buy-bust" operation, undercover detectives posed as drug buyers and attempted to purchase narcotics or illegal drugs from people selling in the particular area they were working.

While Detective Jaime Rascon—in his undercover capacity wearing civilian clothing—was at the 7-Eleven posing as a drug buyer, he came into contact with Codefendant Trinidad Saldaña (Codefendant). After he approached her and conversed casually with her for a few minutes, he learned that she "push[ed] dope." Detective Rascon asked Codefendant if she could get him some "shards," a term that refers to crystal methamphetamine.

Detective Rascon gave Codefendant $40 worth of "operational funds" or "buy money[,]" which is U.S. currency that APD provides to its detectives in order to facilitate such a transaction. Codefendant then sent some text messages from her cell phone. After she sent the text messages, she and Detective Rascon waited for her "connect" to arrive. Shortly thereafter, just as she stated he would do, her "connect," later identified as Defendant [Raul Rodriguez], arrived in a white Camaro, and parked directly in front of Codefendant and Detective Rascon. Defendant was the sole occupant of the car. Codefendant walked to the driver's side window of the white Camaro and gave Defendant the "buy money" provided by Detective Rascon. Defendant then gave Codefendant "something" in exchange for the "buy money." Codefendant walked back to Detective Rascon and handed him two clear plastic bags containing a clear crystal-shaped substance. The substance in the baggies was later determined to be methamphetamine.

After the transaction took place, Defendant drove away from the parking lot. Defendant was followed by other undercover officers who were part of the operation until a fully marked patrol unit was able to initiate a traffic stop. Once the traffic stop was executed, Defendant exited the vehicle and was arrested. The detectives on scene began an inventory search of the car, but the search was stopped when detectives were notified that the vehicle would be sealed in order for officers to obtain a search warrant. Once the search warrant was issued, Detectives searched the car and located the "buy money."

*State v. Rodriguez*, No. A-1-CA-37776, 2021 WL 4841175, at *2 (N.M. Ct. App. Oct. 18, 2021)

(footnote omitted).

## 2. Procedural Background

On August 4, 2016, a grand jury returned an indictment, charging Mr. Rodriguez with trafficking by distribution of methamphetamine (Count I) and conspiracy to commit trafficking of methamphetamine. Doc. 8-1 at 1-2 (Ex. A).[1] While the case was pending before the New Mexico state district court, Mr. Rodriguez moved to suppress the buy money obtained as a result

---

[1] I cite the Bate stamp numbers on the exhibits, attached to the State's answer as Doc. 8-1.

of the execution of a search warrant on his vehicle. *Id.* at 5-21 (Ex. B); *see also id.* at 23-32 (Ex. D, response); *id.* at 34-46 (Ex. F, reply). After holding a hearing, *id.* at 22, 33 (Exs. C, E), the state district court denied the motion to suppress, *id.* at 47-51 (Ex. G). Upon Mr. Rodriguez's request, however, the state district court certified its order denying the motion to suppress for interlocutory appeal. *Id.* at 71-73 (Ex. K); *see also id.* at 74-80 (Ex. L, application for interlocutory appeal to the New Mexico Court of Appeals). The New Mexico Court of Appeals summarily denied the application for interlocutory appeal. *Id.* at 129 (Ex. M).

Back in state district court, Mr. Rodriguez waived his right to counsel, *id.* at 148 (Ex. U), but the court appointed him standby counsel, *id.* at 160 (Ex. Y). On March 27, 2018, a jury returned guilty verdicts on both counts, *id.* at 184-86 (Exs. CC, DD, EE), and the state district court sentenced him to 22 years' incarceration, *id.* at 187-92 (Exs. FF, GG).

On October 24, 2018, Mr. Rodriguez timely filed a direct appeal to the New Mexico Court of Appeals, *id.* at 193-94 (Ex. HH), raising 11 issues: (1) "the indictment should have been quashed due to violations with grand jury presentment"; (2) "the statements by the co-defendant should have been suppressed"; (3) "no conspiracy was ever demonstrated"; (4) "the buy money was never properly authenticated and should be suppressed"; (5) "the search warrant iss[u]ed for Defendant's vehicle should have been suppressed"; (6) "this case should be dismissed for the officer['] outrageous conduct"; (7) "this case should have been dismissed for abuse of discovery process"; (8) "Defendant's *Brady* motion should have been granted as a matter of law"; (9) "Defendant's motions filed pro se were not heard and cause prejudice to his self representation"; (10) "there was no reasonable suspicion for Defendant's stop"; and (11) "the cumulative error in this case should result in a dismissal of the charges against Defendant." *Id.* at 238-57 (Ex. JJ); *see also id.* at 258-307 (Ex. KK, brief in chief, raising the same issues); *id.* at 308-35 (Ex. LL,

response brief); *id.* at 336-55 (Ex. MM, reply brief). On October 18, 2021, the New Mexico

Court of Appeals affirmed the district court in all respects. *Id.* at 356-81 (Ex. NN).

Mr. Rodriguez then filed a petition for writ of certiorari with the New Mexico Supreme

Court, asserting that the New Mexico Court of Appeals erred in affirming the issues it addressed

and erred in failing to address other issues. *Id.* at 382-96 (Ex. OO). The New Mexico Supreme

Court summarily denied the petition for writ of certiorari. *Id.* at 397-98 (Ex. PP).

On December 29, 2022, Mr. Rodriguez filed a pro se Petition for State Habeas Corpus,

raising eight grounds for relief: (1) "Petitioner['s] motion to quash indictment should have been

granted"; (2) "conspiracy was never demonstrated"; (3) "photocopy of the photograph, violation

of the best evidence rule"; (4) "Petitioner['s] motion to suppress search warrant should have been

granted": (5) "violation of the 6th Amendment (Confrontation Clause)"; (6) "discovery order and

missing discovery violation"; (7) "double jeopardy violation"; and (8) " ineffective trial

counsel." *Id.* at 414 (Ex. RR); *see also id.* at 400-81 (full habeas petition). The Law Offices of

the Public Defender conducted a pre-appointment review of the habeas petition, according to

New Mexico Rule 5-802(H)(1), and found that the majority of the claims were addressed on

direct appeal and that the habeas petition "is not a proceeding that a reasonable person with

adequate means would be willing to bring at a person's own expense." *Id.* at 482, 484 (Ex. SS).

The New Mexico state district court then summarily dismissed the petition "as the Petitioner is

not entitled to relief as a matter of law for the reasons outline[d] in the 5-802(H)(1) Pre-

Appointment Review." *Id.* at 492 (Ex. TT). Mr. Rodriguez filed a petition for writ of certiorari

with the New Mexico Supreme Court, *id.* at 493-501 (Ex. UU), which the New Mexico Supreme

Court denied, *id.* at 502 (Ex. VV).

On August 11, 2023, Mr. Rodriguez filed the present Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. After review of the claims pursuant to Habeas Corpus Rule 4, the Court ordered Respondents Attorney General for the State of New Mexico and Warden George Stevenson (collectively "the State") to file a response. Doc. 3. Having now received a response, Doc. 8, and a reply, Doc. 13, this matter is ready for review.

## MOTION TO CLARIFY AND CORRECT PETITION

As an initial matter, after the Court screened this case, it ordered the State to file a response to the § 2254 petition and provided Mr. Rodriguez an opportunity to file a reply to the response. Doc. 3. Following the State's response, Mr. Rodriguez filed a "Motion to Clarify and Correct Petitioner (Raul Rodriguez) Federal Habeas Corpus Petition." Doc. 13; *see also* Doc. 14 (response); Doc. 15 (reply). Although this document is titled as a motion, I recommend the Court construe it as a reply to the § 2254 petition.

When a party proceeds pro se, the court generally construes his pleadings liberally, holding them to a less stringent standard than those a party represented by counsel files. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). In so doing, the court makes allowance for a pro se litigant's "failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Id.* The court will not, however, construct arguments or search the record for the pro se party. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

Liberally construing Mr. Rodriguez's "motion," I find that this document is seeking to provide additional support for the claims listed in the original petition. That is, it does not contain any new arguments or claims, but provides case law to support the arguments and claims asserted in the original petition. Indeed, in response to the "motion," the State asserts that, "to the

extent that Mr. Rodriguez intends to amend the [original] petition in any way," it opposes such amendment. Doc. 14 at 1. In response to this argument, Mr. Rodriguez asserts that "his motion to clarify and correct his federal habeas corpus petition filed on June 20, 2024 does not amend in any additional issues but rather clarified and corrects the same issues originally filed . . . ." Doc. 15 at 1. For these reasons, I recommend the Court construe the motion to clarify (Doc. 13) as a reply to the § 2254 petition.

## EXHAUSTION AND PROCEDURAL DEFAULT

Before turning to the merits of Mr. Rodriguez's petition, I address the related issues of exhaustion and procedural default.

### 1. Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a petition for writ of habeas corpus generally cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that each claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011).[2] "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever v. Kan. State Penitentiary*, 36

---

[2] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

F.3d 1531, 1534 (10th Cir. 1994). To that end, the exhaustion requirement is satisfied even if "the highest court exercises discretion not to review the case." *Id*.

Exhaustion also requires that each claim must have been "fairly presented to the state courts." *Picard v. Connor*, 404 U.S. 270, 275 (1971); *see also Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) ("Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the "substance" of the federal claim in state court.'"). "A petitioner need not invoke talismanic language or cite book and verse on the federal constitution. But, a fair presentation requires more than presenting all the facts necessary to support the federal claim to the state court." *Grant*, 886 F.3d at 890 (cleaned up). "The crucial inquiry is whether the 'substance' of the petitioner's claim has been presented to the state courts in a manner sufficient to put the courts on notice of the federal constitutional claim." *Id.* (cleaned up).

Here, Mr. Rodriguez filed a direct appeal to the New Mexico Court of Appeals and then to the New Mexico Supreme Court.[3] For ease of discussion, below is a chart summarizing the claims in the present petition and whether Mr. Rodriguez fairly presented those issues to the New Mexico Supreme Court on direct appeal, thus exhausting them.

---

[3] Mr. Rodriguez also filed a post-conviction habeas petition to the state court, which he appealed to the New Mexico Supreme Court. However, I find that Mr. Rodriguez's state habeas appeal did not fairly present any issues to the state's highest court. That is, Mr. Rodriguez raised eight issues in his state habeas appeal. Doc. 8-1 at 436-79 (Ex. RR). After the state court denied his habeas petition, he filed a petition for writ of certiorari to the New Mexico Supreme Court, as is the proper procedure under Rule 5-802 NMRA. Other than filling in the docket information and request for relief ("new trial"), however, the petition for writ of certiorari is blank. It lists no claims for relief and does not cite or incorporate the claims raised below with the state court. Accordingly, when considering exhaustion, I will review only those claims that Mr. Rodriguez brought to the New Mexico Supreme Court on direct appeal.

| Claims in the Present § 2254 Petition | Claim Presented to NMCA on Direct Appeal? | Claim Presented to NMSC on Direct Appeal? |
|---|---|---|
| 1(a). The trial court should have granted the motion to quash the indictment because the presentation did not differentiate between the two charges against two defendants (Doc. 1 at 5) | Yes (Doc. 8-1 at 238, 270-71, 366-67) | Yes (Doc. 8-1 at 391) |
| 1(b). The trial court should have granted the motion to quash the indictment because the district attorney improperly exercised control over the selection and excusal of jurors (Doc. 1 at 5) | No | No |
| 1(c). The trial court should have granted the motion to quash the indictment because the district attorney used the wrong name for Mr. Rodriguez (Doc. 1 at 5) | Yes (Doc. 8-1 at 271, 366) | No |
| 1(d). The trial court should have granted the motion to quash the indictment because the district attorney used leadings questions with Detective Rascon (Doc. 1 at 6-7) | Yes (Doc. 8-1 at 271-73, 366, 368-69) | Yes (Doc. 8-1 at 391) |
| 2. Insufficient evidence regarding conspiracy (Doc. 1 at 8-9) | Yes (Doc. 8-1 at 240-41, 280-83, 375-78) | Yes (Doc. 8-1 at 392-93) |
| 3. The trial court violated the best evidence rule in allowing a photocopy of the buy-money photograph (Doc. 1 at 10-12) | Yes (Doc. 8-1 at 242, 283-85, 373-75) | Yes (Doc. 8-1 at 392) |
| 4(a). The trial court should have granted the motion to suppress because the search warrant form was outdated (Doc. 1 at 12) | Yes (Doc. 8-1 at 243-44, 287, 289, 365-66) | Yes (Doc. 8-1 at 390) |
| 4(b). The trial court should have granted the motion to suppress because the district attorney failed to sign the required section for approval of the search warrant (Doc. 1 at 12) | Yes (Doc. 8-1 at 243-44, 287, 289, 365-66) | No |
| 4(c). The trial court should have granted the motion to suppress because Detective Rascon did not sign the search warrant inventory sheet (Doc. 1 at 13) | Yes (Doc. 8-1 at 243, 287, 289, 365-66) | Yes (Doc. 8-1 at 390) |
| 4(d). The trial court should have granted the motion to suppress because detectives failed to seize and hold the alleged operational funds (Doc. 1 at 13) | Yes (Doc. 8-1 at 288, 365-66) | No |
| 4(e). The trial court should have granted the motion to suppress because the search warrant did not contain any particularity as to the property to be seized (Doc. 1 at 13-14) | Yes (Doc. 8-1 at 243, 287, 364-65) | Yes (Doc. 8-1 at 390) |
| 5. Violation of Sixth Amendment Confrontation Clause regarding Ms. Saldana's out-of-court statements (Doc. 1 at 15) | Yes (Doc. 8-1 at 239, 275-80, 369-73) | Yes (Doc. 8-1 at 391-92) |

| | | |
|---|---|---|
| 6(a). *Brady* and discovery violation regarding the State's Operations Plan (Doc. 1 at 16) | Yes (Doc. 8-1 at 248, 294-95, 357) | Yes (Doc. 8-1 at 394-95)[4] |
| 6(b). *Brady* and discovery violation regarding pictures of the buy money (Doc. 1 at 16-17) | Yes (Doc. 8-1 at 248, 294-95, 357) | Yes (Doc. 8-1 at 394-95) |
| 6(c). *Brady* and discovery violation regarding Detective Clinginpeel's lapel recording (Doc. 1 at 17) | Yes (Doc. 8-1 at 248, 250-51, 294-95, 298, 357) | Yes (Doc. 8-1 at 394-95) |
| 6(d). *Brady* and discovery violation regarding Detective Irwin's lapel recording (Doc. 1 at 18) | Yes (Doc. 8-1 at 248, 294-95, 357) | Yes (Doc. 8-1 at 394-95) |
| 6(e). *Brady* and discovery violation regarding the unredacted audio recording between Detective Rascon and Co-Defendant Saldana (Doc. 1 at 18-19) | Yes (Doc. 8-1 at 248, 294-95, 298, 357) | Yes (Doc. 8-1 at 394-95) |

As illustrated by the table, Mr. Rodriguez exhausted all but four claims. As to the unexhausted claims, Mr. Rodriguez, who bears the burden, makes no argument that exhaustion of those claims would be futile because of an absence of an available state corrective process or because circumstances exist that render such process ineffective to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(B); *Selsor*, 644 F.3d at 1026. Mr. Rodriguez's petition, thus, is a mixed petition, containing both exhausted and unexhausted claims.

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Grant*, 886 F.3d at 891–92 (internal quotation marks and citation omitted). That rule, however, is not absolute and a district court faced with a petition containing both exhausted and unexhausted claims—i.e., a mixed petition—can:

[4] An argument could be made that Plaintiff did not exhaust any of the *Brady*/discovery violation claims. The New Mexico Court of Appeals declined to consider the merits of these issues because of insufficient briefing, Doc. 8-1 at 357 n.1, and on appeal to the New Mexico Supreme Court, Plaintiff summarily argued that the New Mexico Court of Appeals erred in refusing to address these issues, *id.* at 395. Because "the assertion of a general claim before the state court is insufficient to exhaust a more specific claim asserted for habeas relief," *Grant*, 886 F.3d at 891, these claims may not be exhausted. However, I recommend that the Court need not resolve this issue because neither side briefed it and because, even if the claims are unexhausted, they fail on the merits, as discussed below.

"(1) dismiss the entire petition without prejudice in order to permit exhaustion of state remedies, or (2) deny the entire petition on the merits." *Moore v. Schoeman*, 288 F.3d 1231, 1235 (10th Cir. 2002). The court may also permit the petitioner to delete the unexhausted claim from his petition and proceed only on the exhausted claims, *Rose v. Lundy*, 455 U.S. 509, 510 (1982), or, if the equities favor such an approach, it may stay the federal habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust the previously unexhausted claims, *Rhines v. Weber*, 544 U.S. 269, 279 (2005).

*Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016).

Here, the State waives the exhaustion requirement and asks that the Court consider and deny the entire petition on the merits. Doc. 8 at 13; *see also* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."). In light of this waiver, and, as discussed below, given that I find none of the unexhausted claims meritorious, I recommend that the Court proceed under option two and deny the entire petition on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); *Richwine v. Romero*, 462 F. App'x 770, 773 (10th Cir. 2011) ("[I]t would be an unusual step for a court to dispose of a case on exhaustion grounds sua sponte after the state has expressly waived an exhaustion defense.") (internal quotation marks and citation omitted).

## 2. Procedural Default

Procedural default is an important corollary to exhaustion and "prevents a federal court from reviewing a habeas claim when the state court declined to consider the merits of that claim based on independent and adequate state procedural grounds." *Smith v. Allbaugh*, 921 F.3d 1261, 1267 (10th Cir. 2019) (internal quotation marks and citation omitted). Procedurally defaulted claims are "technically exhausted," but "exhaustion in this sense does not automatically entitle

the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner

procedurally defaulted those claims, the prisoner generally is barred from asserting those claims

in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

Here, the New Mexico Court of Appeals declined to decide certain issues on the merits,

instead dismissing them under procedural rules.[5] The issues Mr. Rodriguez raised that the New

Mexico Court of Appels dismissed under procedural rules, and the reasons for the dismissals are

as follows:

- Claim 1(a), the trial court should have granted the motion to quash the indictment
  because the presentation did not differentiate between the two charges against two
  defendants: failed to adequately develop a clear argument (Doc. 8-1 at 367);

- Claim 1(c), the trial court should have granted the motion to quash the indictment
  because the district attorney used the wrong name for Mr. Rodriguez: issue not
  preserved (*id.* at 366);

- Claim 6 (including all subparts), *Brady*/discovery violations: briefing does not
  refer to how these issues were preserved or does not provide citations to the
  record proper and argument underdeveloped (*id*. at 257 n.1).

I find these reasons to be independent and adequate procedural grounds such that

procedural default applies. "A state procedural default is independent if it relies on state law,

rather than federal law. A state procedural default is adequate if it is firmly established and

regularly followed." *Smith v. Workman*, 550 F.3d 1258, 1274 (10th Cir. 2008) (internal quotation

marks and citation omitted). First, failure to preserve is a procedural ground based on state law

and is firmly established and regularly followed. *See* Rule 12-321 NMRA; *State v. Ortiz*, 2009-

NMCA-092, ¶ 32, 215 P.3d 811, 818 ("We will not consider issues not raised in the district court

unless the issues involve matters of jurisdictional or fundamental error."). The same is true

---

[5] For those issues that Mr. Rodriguez appealed, the New Mexico Supreme Court summarily
denied the petition for writ of certiorari. Doc. 8-1 at 397.

regarding the procedural ground of undeveloped arguments. *See Ortiz*, 2009-NMCA-092, ¶ 32 ("Nor will we review an undeveloped and unclear argument on appeal."); *Nguyen v. Bui*, 2023-NMSC-020, ¶ 20, 536 P.3d 482, 486 ("This Court will, on rare occasion, address issues that are undeveloped or not raised at all by the parties. However, as a general rule, this Court will not promulgate case law based on our own speculation rather than the parties' carefully considered arguments." (internal quotation marks and citation omitted)).

Mr. Rodriguez makes no showing that procedural default should not apply to these claims. *See Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021) ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). I, therefore, recommend finding that claims 1(a), 1(c), and 6 (including all subclaims) are procedurally defaulted.

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding."[6] 28

U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170,

181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable. If this standard is difficult to meet, that is because it was meant
> to be. . . . [Section] 2254(d) stops short of imposing a complete bar on federal-
> court relitigation of claims already rejected in state proceedings. It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's
> precedents. It goes no further. Section 2254(d) reflects the view that habeas
> corpus is a guard against extreme malfunctions in the state criminal justice
> systems, not a substitute for ordinary error correction through appeal.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks

omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A § 2254(d)(1) analysis requires two steps: "First, as a 'threshold matter,' we must

determine 'what constitutes clearly established Federal law, as determined by the Supreme Court

of the United States.'" *Andrew v. White*, 62 F.4th 1299, 1310–11 (10th Cir. 2023) (quoting

*Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). "In step two, we consider whether the state court

decision was contrary to or an unreasonable application of that clearly established federal law."

*Id.* at 1311 (internal quotation marks and citation omitted). A state court decision is "contrary to"

clearly established federal law "if the state court applies a rule different from the governing law

set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court

has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court decision "unreasonably applies" clearly established federal law if it "correctly

---

[6] Alternatively, when a claim has not been adjudicated on the merits in state court, the federal court
makes its own de novo determination. *Revilla v. Gibson*, 283 F.3d 1203, 1210 (10th Cir. 2002).

identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining whether a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the

presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

## MERITS ANALYSIS

Turning to the merits of the Mr. Rodriguez's claims, I will address each in turn, grouping together related subclaims. Regarding exhausted claims adjudicated on the merits in state court, for which this Court must determine if the state court's decision was contrary to, or unreasonably applied, clearly established federal law or if the state court's decision was based on an unreasonable determination of the facts, I review the New Mexico Court of Appeal's decision on direct appeal (Doc. 8-1 at 356-81, Ex. NN). I do so because the state's highest court, the New Mexico Supreme Court, summarily denied a writ of certiorari on direct appeal, *id.* at 397, and so I "'look through' that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1190 (2018).

### 1. Motion to Quash Indictment

Mr. Rodriguez argues that the trial court erred in denying his motion to quash the indictment for several reasons. As discussed above, one of the subclaims is unexhausted (claim 1(b): the district attorney improperly exercised control over selection or jurors) and two are procedurally defaulted (claim 1(a): the district attorney failed to differentiate between the two charges; claim 1(c): the district attorney used the wrong name). As to the exhausted and not defaulted claim (claim 1(d): the district attorney used leading questions), the New Mexico Court of Appeals examined this issue and held that the conduct at issue—the State correcting Detective Rascon's testimony—did not rise to the level of conduct "that infringes upon the independent

judgment of grand jurors." Doc. 8-1 at 369. The court thus declined "to invalidate the indictment of the grand jury on this basis, particularly because Defendant has made a bare assertion and has not made a showing of demonstrable prejudice." *Id.*

Setting aside the procedural bars at play in the present case, I recommend finding that all of Mr. Rodriguez's subclaims regarding the indictment fail for the same reason. *See Revilla v. Gibson*, 283 F.3d 1203, 1210–11 (10th Cir. 2002) ("In contrast to its procedural complications, however, the claim may be disposed of in straightforward fashion on substantive grounds. We therefore invoke our discretion to bypass complex issues of exhaustion and procedural bar to reject the claim on the merits." (internal citations omitted)). Courts have held that alleged errors before a grand jury that potentially impact a probable cause finding are harmless following a jury's finding of guilt. In *United States v. Mechanik*, the Supreme Court assumed that a violation of Federal Rule of Civil Procedure 6(d) occurred during the grand jury presentation when two government witnesses were present and testified at the same time. 475 U.S. 66, 69-70 (1986). Such a rule, it held, was designed to protect "against the danger that a defendant will be required to defend against a charge for which there is no probable cause to believe him guilty." *Id.* at 70. And while the error "had a theoretical potential to affect the grand jury's determination," "the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt." *Id.* Thus, "[m]easured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt." *Id.*

Relying on *Mechanik*, the Tenth Circuit held that a defendant who was shackled and handcuffed during his grand jury testimony was not entitled to § 2254 relief because "the jury's

finding that [defendant] was guilty beyond a reasonable doubt alleviates the concern that the

grand jury's finding of probable cause to charge was tainted by the shackling." *Tisthammer v.*

*Williams*, 49 F. App'x 757, 765 (10th Cir. 2002); *see also United States v. Lopez-Gutierrez*, 83

F.3d at 1235, 1244 (10th Cir. 1996) ("Where the alleged errors are technical violations affecting

only the grand jury's finding of probable cause, the defendant must have successfully challenged

the indictment before the petit jury rendered a guilty verdict.") (internal quotation marks and

citation omitted). In so holding, the Tenth Circuit acknowledged its prior holding in *Lopez*

*Gutierrez* that if "the claimed errors went 'beyond the question of whether the grand jury had

sufficient evidence upon which to return an indictment' and essentially threatened the

defendant's rights to fundamental fairness, the issue is justiciable notwithstanding a subsequent

guilty verdict by the petit jury."[7] *Tisthammer*, 49 F. App'x at 765 (citing *Lopez-Gutierrez*, 83

F.3d at 1245). The *Tisthammer* court questioned whether such a holding, made in a direct appeal

case, would apply in the post-conviction context and held that even if it did, the claim at issue

did not implicate fundamental fairness. *Id.*

        Here too, the errors Mr. Rodriguez alleges—that the district attorney did not differentiate

between the two charges and the two defendants, improperly exercised control over selection of

the jurors,[8] used the wrong name for Mr. Rodriguez, and used leading questions with Detective

---

[7] "Conduct that might properly be characterized as transgressing a defendant's right to
fundamental fairness would include, for example, an attempt by the government to unfairly sway
the grand jury or pervasive attempt to charge without cause or to undermine the defense. Under
such circumstances, we review the record to determine whether the prosecutor engaged in
flagrant or egregious misconduct which significantly infringed on the grand jury's ability to
exercise independent judgment." *Lopez-Gutierrez*, 83 F.3d at 1245 (cleaned up).

[8] Mr. Rodriguez provides no further information to explain this conclusory claim, only that "[t]he
ADA at Petitioner['s] Grand Jury indictment improperly exercised control over the selection and
excusal of the jurors." Doc. 1 at 5.

Rascon—are technical or procedural, potentially affecting the grand jury's finding of probable cause. Mr. Rodriguez makes no argument that they rise to the level of threatening fundamental fairness. I therefore recommend that the Court reject all the claims in ground one as not cognizable for federal habeas relief.

### 2. Insufficient Evidence

Mr. Rodriguez was convicted of both trafficking a controlled substance by distribution and conspiracy to commit trafficking a controlled substance by distribution. Doc. 8-1 at 184-85. He now argues that there was insufficient evidence at trial to demonstrate the conspiracy charge. Doc. 1 at 8. He argues that "the evidence provided [was] insufficient to sustain a conviction for conspiracy because the state failed to demonstrate that the petitioner knew or cooperated in the objective of the conspiracy." Doc. 13 at 3.

The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "In short, *Winship* presupposes as an essential [element] of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). In reviewing sufficiency of the evidence, a court must view the evidence in a light most favorable to the prosecution and determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted). "And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable," creating a "twice-deferential standard." *Parker v. Matthews*, 567

U.S. 37, 43 (2012) (internal quotation marks and citation omitted). In other words, "a federal

court may not overturn a state court decision rejecting a sufficiency of the evidence challenge

simply because the federal court disagrees with the state court. The federal court instead may do

so only if the state court decision was 'objectively unreasonable.'" *Meek v. Martin*, 74 F.4th

1223, 1253 (10th Cir. 2023) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

Mr. Rodriguez presented this same claim to the New Mexico Court of Appeals on direct

appeal, which held that there was sufficient evidence to find him guilty of conspiracy:

> Defendant asserts the State failed to prove any conspiracy was created by the
> actions of Defendant and Codefendant. Defendant contends that the transaction
> the detectives witnessed between Codefendant and him was not actual evidence
> that a drug transaction transpired in furtherance of the crime of trafficking
> methamphetamine. The State counters that there was sufficient evidence to
> sustain Defendant's conviction for conspiracy. We agree with the State.

Doc. 8-1 at 375.

The Court of Appeals used the jury instructions as a guidepost for the elements of

conspiracy: "1. [D]efendant and another person by words or acts agreed together to commit

Trafficking a Controlled Substance by Distribution; 2. [D]efendant and the other person intended

to commit Trafficking a Controlled Substance by Distribution[.]" *Id.* at 376 (citing UJI 14-2810

NMRA). It then recited the evidence at trial:

> During trial, the State's case was supported by the following testimony: (1)
> Detective Rascon, who was the undercover detective on scene, testified that he
> had contact with Codefendant while at the 7-Eleven convenience store and asked
> her if he could purchase any "shards"; (2) Detective Rascon testified that he
> handed Codefendant $40 of APD's operational funds also known as "buy
> money"; (3) Detective Rascon testified that after he gave Codefendant the buy
> money, she used her cell phone and sent a couple of text messages, and that after
> she sent the text messages, they waited ten or fifteen minutes for her "connect"—
> or drug dealer—to arrive; (4) Detective Rascon testified that the car Codefendant
> told him would be arriving—a "white Camaro" with "rims"—arrived soon after
> and parked right in front of them; (5) Detectives Rascon and Hernandez testified
> that when the Camaro arrived Codefendant walked over to the driver's side
> window of the car, which was parked directly in front of them with only one

occupant in the vehicle; (6) Detective Rascon and Detective Hernandez testified that they could clearly see the driver give Codefendant something in exchange for the "buy money" from their respective locations; (7) Detective Rascon testified that Codefendant then took a few steps back to him and gave him two clear plastic bags that contained a clear crystal-shaped substance; (8) the substance in the bags was later determined to be methamphetamine; and (9) Detective Rascon testified that later when a search warrant was obtained for the white Camaro, he and other detectives discovered their "buy money" in the car.

*Id.* at 377-78. Based on this evidence, the New Mexico Court of Appeals found the "evidence sufficient to meet the elements required by the jury instructions." *Id.* at 378.

I agree with the New Mexico Court of Appeals that, based on the evidence presented at trial viewed in the light most favorable to the prosecutor, a rational trier of fact could find the essential elements of conspiracy beyond a reasonable double. Mr. Rodriguez argues that neither his phone nor his co-defendant's phone was seized in order to confirm (or refute) the text messages sent. Doc. 13 at 6. However, simply because Mr. Rodriguez believes different evidence should have been presented at trial does not diminish the sufficiency of the evidence that was presented at trial. Otherwise, Mr. Rodriguez merely repeats his conclusory argument that the State "failed to demonstrate that the Petitioner knew of cooperated in the objective conspiracy," Doc. 13 at 2, but makes no argument to meet the "twice-deferential standard" that the New Mexico Court of Appeal's finding of sufficient evidence was objectively unreasonable. *Parker*, 567 U.S. at 43. Mr. Rodriguez also presents no argument to establish that the court's holding was based on an unreasonable determination of the facts in light of the evidence presented at trial. To the contrary, he recites many of the same facts the New Mexico Court of Appeals recited. Doc. 1 at 8-9, Doc. 13 at 5-6.

For these reasons, I recommend the Court deny relief based on the claim of insufficient evidence.

### 3. Best-Evidence Rule

Mr. Rodriguez argues that the trial court violated the best evidence rule by allowing into evidence at trial a photocopy of a photograph of the buy money that was never properly authenticated.[9] Doc. 1 at 25. Relief under § 2254 is only available to a person in state custody "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of federal habeas courts to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Thus, when reviewing alleged evidentiary errors, this federal habeas court is limited to examining whether the challenged evidence "so infused the trial with unfairness as to deny due process of law." *Id.* at 75 (internal quotation marks and citation omitted); *see also Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) ("[O]f course, federal habeas review is not available to correct state law evidentiary errors. As a habeas court, we sit only to vindicate an applicant's constitutional rights. Thus, [petitioner] is entitled to relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.") (cleaned up).

Mr. Rodriguez's argument appears to be based on a misunderstanding. A review of the records indicates that the photograph admitted at trial of the buy money was not a photocopy, but the original photograph. Detective Rascon explained at trial the procedure for use of buy money (also called operational funds): "We photograph or photocopy the operation funds in order to

---

[9] When discussing ground three, Mr. Rodriguez includes several arguments related to production of evidence that overlap with his ground six claims (*Brady*/discovery violations). Doc. 1 at 10-12, Doc. 13 at 8-9. I will address those argument below, with the other ground six arguments.

retrieve the funds after the operation, and we photograph it or photocopy it in order to document the serial number, that way we will be able to recover them after." Doc. 9-1 at 123:21-25. He then stated that "in this particular case" the money "was photographed" and after the operation, the photograph was tagged into evidence. *Id.* at 124:1-17. When the State moved to admit the photograph into evidence, defense counsel objected to, arguing that a photocopy of the photograph "is not good enough." *Id.* at 125:15-16, 24. Upon further questioning, Detective Rascon clarified that the photograph at issue was the original photograph taken of the buy money, not a photocopy, and the court admitted the photograph. *Id.* at 126:17 to 127:11.

Mr. Rodriguez had the same misunderstanding on direct appeal, presenting the same issue to the New Mexico Court of Appeals. Doc. 8-1 at 284 ("Herein, the State used a photocopy of the photograph of the buy money. Neither the original buy money or the original photograph of the buy [money] was given to the jury."). The New Mexico Court of Appeals also explained the misunderstanding:

> A review of the trial transcript in this case indicates the following: (1) a photograph was taken of the buy money before the operation; (2) the disc containing the photograph was then tagged into evidence; (3) after the photograph was tagged into evidence Detective Rascon retrieved it for trial; (4) during trial Detective Rascon produced a photograph of the two $20 bills inside of a plastic bag that had an evidence tag with the Detective's initials on it; (5) Detective Rascon testified that the photograph that was in the bag was in the same condition as when it was originally tagged into evidence; and (6) the State moved to admit the photograph an as exhibit. Defendant objected to the exhibit under the best evidence rule asserting that it was only a photocopy and not the photograph itself, noting that Detective Rascon referred to it as a photocopy. Our review of the transcript does not indicate Detective Rascon referred to the exhibit as a photocopy of a photograph. Detective Rascon reiterated in his testimony that the exhibit was the photograph he took before the money was used. The district court admitted the photograph over Defendant's objection.

Doc. 8-1 at 374-75. The Court of Appeals held that the district court did not abuse its discretion because "the district court could have found that the photograph, as tagged into evidence and

submitted as an exhibit[,] could qualified as an original under Rule 11-1001(D)." *Id.* at 375 ("An 'original' of a photograph includes the negative or a print from it.") (citing Rule 1-1001(D) NMRA).

In the present petition, Mr. Rodriguez again asserts that the trial court erred in admitting a photocopy of the photograph, Doc. 1 at 10, and that he was prejudiced "as he was not allowed to view the original photograph" to compare it with the photocopy, Doc. 13 at 8. As discussed above, this argument is based on a misunderstanding of the evidence admitted at trial. Mr. Rodriguez also alleges, without support, that "the photo-copy of the alleged photograph before the operation began was also provided or and submitted into evidence 'after the fact' of the execution of the search warrant and therefore could have possibly been photocopied after the execution of the search warrant and not before the operation began." Doc. 1 at 11. The trial testimony, however, indicated that the photograph was taken before the operation. Doc. 9-2 at 124:9-14. Given that Mr. Rodriguez's arguments are based on a misunderstanding of the trial evidence, I do not find that admission of the photograph so infused the trial with unfairness as to deny due process of law. And the New Mexico Court of Appeal's rejection of this claim is not contrary to or an unreasonable application of clearly established federal law. I therefore recommend denying relief on ground three.

### 4. Motion to Suppress

In ground four of his petition, Mr. Rodriguez argues that the state court should have suppressed evidence of the buy money because (1) the search warrant form used was outdated and therefore invalid; (2) the district attorney failed to sign the required section of the warrant; (3) Detective Rascon did not sign the search warrant inventory sheet; (4) detectives failed to seize and hold the alleged operational funds; and (5) the search warrant did not contain any

particularity as to the property to be seized. Doc. 1 at 12 -14. Although some of these grounds are unexhausted, I recommend rejecting them all for the same reason: Mr. Rodriguez had a full and fair opportunity to litigate the Fourth Amendment issues before both the trial court and on direct appeal.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'" *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting U.S. Const. amend. IV; *Arizona v. Evans,* 514 U.S. 1, 10 (1995)). Nonetheless, Supreme Court "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* "The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights. . . . [T]he rule is not a personal constitutional right." *Stone v. Powell*, 428 U.S. 465, 486 (1976).

Applying the exclusionary rule to § 2254 cases, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494.[10] "An 'opportunity' for full and fair consideration requires at least 'the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' a 'full and fair evidentiary hearing,' and 'recognition and at least colorable application of the correct Fourth Amendment

---

[10] While *Stone* was decided before the Antiterrorism and Effective Death Penalty Act of 1996, the Tenth Circuit has rejected an argument that *Stone* is no longer applicable after AEDPA. *See Herrera v. Lemaster*, 225 F.3d 1176, 1178 (10th Cir. 2000) ("We are not persuaded, however, that by enacting AEDPA Congress intended to expand in any way a habeas petitioner's right to overturn a state court decision.").

constitutional standards.'" *United States v. Lee Vang Lor*, 706 F.3d 1252, 1258 (10th Cir. 2013)

(quoting *Gamble v. State of Okl.*, 583 F.2d 1161, 1165 (10th Cir. 1978)).

Here, Mr. Rodriguez had a full and fair opportunity to litigate his Fourth Amendment

claim in state court. While his case was proceeding before the state district court, Mr. Rodriguez

filed a Motion to Suppress Search Warrant, raising the same issues he raises in the present

petition. Doc. 8-1 at 5-12 (Ex. B); *id.* at 23-28 (Ex. D, State's response); *id.* at 34-39 (Ex. F,

reply). After the court set a hearing, *id.* at 22 (Ex. C), the parties agreed that the court would

instead rule on the briefs, *id.* at 33 (Ex. E). The court later denied the motion, finding that the

warrant application was sufficiently specific and any warrant return deficiencies did not

prejudice Mr. Rodriguez. *Id.* at 47-51 (Ex. G). The court, however, also certified the motion to

suppress for an interlocutory appeal to the New Mexico Court of Appeals.[11] *Id.* at 71-73 (Ex. K);

*see also id.* at 75-80 (Ex. L, application for interlocutory appeal). The New Mexico Court of

Appeals denied the application for interlocutory appeal. *Id.* at 129 (Ex. M).

Meanwhile, in the state district court, Mr. Rodriguez filed a pro se "Motion for Violation

of the 4th Amendment/Missing Money/Removal of F.I. Photo Disk from Evidence," arguing that

his vehicle was seized without a warrant and that the search warrant inventory form was lacking

information. *Id.* at 149-50 (Ex. V); *id.* at 157-59 (Ex. X, State's response). The court held a

hearing on this motion (and several other motions), during which both Detectives Rascon and

Lopez testified. Doc. 9-1 at 9-71. The court ruled from the bench, denying the motion to

suppress. *Id.* at 71-72.

---

[11] At the same time that the court permitted the interlocutory appeal, Mr. Rodriguez filed a
Second Motion to Suppress Buy Money, this time arguing that a detective on the scene illegally
entered Mr. Rodriguez's car before obtaining a search warrant. Doc. 8-1 at 68-70 (Ex. J).

After his conviction, Mr. Rodriguez filed a direct appeal to the New Mexico Court of Appeals arguing, among other issues, that the search warrant should have been suppressed because it lacked specificity and was not properly executed given that it was not signed by Detective Rascon, was not approved by a District Attorney, and not on the proper form. Doc. 8-1 at 243-45 (Ex. JJ, docketing statement); *id.* at 285-90 (Ex. KK, brief in chief). The Court of Appeals rejected these arguments, holding that it was "satisfied that the warrant was sufficiently particular to direct an executing officer to the items to be seized." *Id.* at 365 (Ex. NN) (citing *State v. Fernandez*, 1999-NMCA-128, ¶ 31, 990 P.2d 224, 228, which in turn relied on *Franks v. Delaware*, 438 U.S. 153 (1978)). The court also held that Mr. Rodriguez failed to show that any alleged technical violations prejudiced him. *Id.* at 365-66 (Ex. NN) (citing *State v. Malloy*, 2001-NMCA-067, ¶ 11, 34 P.3d 611, 614, which in turn relied on *United States v. Negrete–Gonzales,* 966 F.2d 1277, 1283 (9th Cir. 1992)).

In sum, it is clear from the record that Mr. Rodriguez had a full and fair opportunity to litigate the Fourth Amendment issues before both the trial court and on direct appeal. Indeed, Mr. Rodriguez offers no argument to the contrary. The only potentially relevant argument Mr. Rodriguez puts forth is that "the Court ruled using the test . . . which governs misrepresentation or omission in the warrant," but that it should have used the test for particularity in a warrant. Doc. 13 at 13 (citing *State v. Hinahara*, 2007-NMCA-116). This argument could be read as asserting that Mr. Rodriguez did not have a full and fair opportunity to litigate the Fourth Amendment claim because the court did not apply the correct Fourth Amendment constitutional standard. However, contrary to Mr. Rodriguez's assertion, the New Mexico Court of Appeals on direct appeal did apply the test for particularity, holding that, "We are satisfied that the warrant

was sufficiently particular to direct an executing officer to the items to be seized, despite the generic language used." Doc. 8-1 at 365.

For these reasons, I recommend finding that the Fourth Amendment claims are precluded from federal habeas relief under *Stone*.

**5.  Confrontation Clause**

In his fifth ground for relief, Mr. Rodriguez argues that his rights under the Sixth Amendment Confrontation Clause were violated. As background, Mr. Rodriguez was charged alongside Co-defendant Trinidad Saldana. However, Ms. Saldana absconded and so was not available at trial. *See* Doc. 8-1 at 370 n.5. The state district court admitted at trial an audio recording between Detective Rascon and Ms. Saldana wherein Detective Rascon solicited drugs from Ms. Saldana. Doc. 9-2 at 121:6-17 (trial transcript). After playing the recording for the jury, the State asked Detective Rascon about a portion of the recording referencing a "white Camaro" and "rims." *Id.* at 128:1-3. Detective Rascon explained that Ms. Saldana informed him that her "connect"—i.e. drug dealer—was going to show up in a white Camaro with rims. *Id.* at 127:21 to 128:7. In the present petition, Mr. Rodriguez argues that this testimony, "implicating the Petitioner with an out of court statement made by a non-testifying co-defendant," violated his right of confrontation. Doc. 1 at 15.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has held that "testimonial statements of absent witnesses are inadmissible at trial unless the witness is unavailable and the defendant has had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Testimony in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (quotation omitted).

While the Supreme Court has not provided a laundry list of what is considered testimonial, it has held that testimony includes statements made with the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution, *Davis v. Washington*, 547 U.S. 813, 822 (2006), and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (citation omitted). Many "courts, post-*Crawford*, have found that statements made by co-conspirators during the course of and in furtherance of the conspiracy are not testimonial and do not violate the Confrontation Clause within the meaning of *Crawford.*" *United States v. Heijnen*, No. CR 03-2072 JB, 2006 WL 1228949, at *4 (D.N.M. Feb. 16, 2006) (collecting cases).

Mr. Rodriguez raised this issue on direct appeal. Citing *Crawford*, the New Mexico Court of Appeals considered "whether Detective Rascon's conversation with Codefendant at the 7-Eleven was the type of questioning by police which elicits testimonial statements for the purposes of the Confrontation Clause." Doc. 8-1 at 370-71. The court concluded the statements were non-testimonial:

> The statements at issue here were not part of an interrogation for the purpose of investigating past events, for the purpose of prosecution, and they were made while talking freely. Further, the statements made by Codefendant were for the purpose of assisting the detective—unbeknownst to Codefendant—to set up the purchase of drugs. Detective Rascon testified about the conversation he had with Codefendant leading up to the actual exchange of drugs between her and Defendant. We conclude that Codefendant's statements were non-testimonial and thus did not violate Defendant's rights under the Confrontation Clause.

*Id.* at 372-73.

Mr. Rodriguez fails to present any argument to show that this decision was contrary to, or unreasonably applied, clearly established law or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. To the contrary, this

decision is in line with clearly established federal law. *See Davis*, 547 U.S. at 825 (citing the situation in *Bourjaily v. United States*, 483 U.S. 171, 181–184 (1987)—statements made unwittingly to a government informant—as an example of "clearly nontestimonial" statements). I therefore recommend denying relief on ground five.

### 6.  *Brady*/Discovery Violation

In ground six of his petition, Mr. Rodriguez argues that the State committed several *Brady* and/or discovery violations. Doc. 1 at 30. Specifically, he alleges that the State withheld its operations plan, pictures of the buy money, Detective Clinginpeel's lapel recording, Detective Irwin's lapel recording, and an unredacted audio recording of interactions between Detective Rascon and Co-Defendant Saldana.[12] *Id.* at 16 -19. As discussed above, I recommend finding that these claims are procedurally barred. However, to the extent the Court disagrees, or chooses to bypass the procedural issue, I also recommend that these claims fail on the merits. *See Smith v. Duckworth*, 824 F.3d 1233, 1242 (10th Cir. 2016) ("[W]here 'the claim may be disposed of in a straightforward fashion on substantive grounds,' this court retains discretion to bypass the procedural bar and reject the claim on the merits.") (quoting *Revilla v. Gibson*, 283 F.3d 1203, 1210–11 (10th Cir. 2002)). In doing such a review, because the state court did not decide these issues on the merits, this Court shall apply a de novo standard of review. *Stouffer v. Duckworth*,

---

[12] In reply, Mr. Rodriguez argues for the first time that the State should have seized his phone and Co-defendant Saldana's phone in order to produce the text messages on both. Doc. 13 at 23-24. He likewise argues for the first time that the State failed to produce a disk of photos taken of the inside of his vehicle, a nearby 7-11 store video, and complete lapel recordings from Detective Lopez, Detective Altman (which Mr. Rodriguez acknowledges does not exist), Detective Garcia (which Mr. Rodriguez acknowledges does not exist), Detective Marentes, and Detective Martinez (which Mr. Rodriguez acknowledges does not exist). *Id.* at 24-26. I recommend that the Court decline to address these issues raised for the first time in reply. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief.").

825 F.3d 1167, 1179 (10th Cir. 2016) ("If the state court did not decide the claim on the merits, the stringent principles of deference under 28 U.S.C. § 2254 are inapplicable. In that case, federal habeas courts review the claim de novo." (cleaned up)).

As an initial matter, Mr. Rodriguez argues that the State violated a discovery order when it failed to disclose the listed evidence and information. Doc. 13 at 16. I recommend rejecting this argument because "it is not the province of federal habeas courts to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991); *see also Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (holding that an alleged violation of a state discovery rule "is not cognizable on habeas, because it is not a constitutional violation"); *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1011 (10th Cir. 1999) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.") (citing *Weatherford v. Bursey,* 429 U.S. 545, 559 (1977)).

To the extent Mr. Rodriguez also argues that, in violating the state court discovery order, the State also committed *Brady* violations, I also recommend rejecting such an argument. Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "*Brady*'s holding has since been extended to require disclosure by the prosecutor even when the defendant has not requested the withheld material or has made only a general request, and to cover impeachment evidence as well as exculpatory evidence." *United States v. Erickson*, 561 F.3d 1150, 1162 (10th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976), and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "To establish that a *Brady* violation undermines a

conviction, a convicted defendant must make each of three showings: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (internal quotations and citations omitted). "Prejudice satisfying the third element exists when the suppressed evidence is material for *Brady* purposes." *Fontenot v. Crow*, 4 F.4th 982, 1080 (10th Cir. 2021) (internal quotation marks and citation omitted). "Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324, (2017) (internal quotations and citations omitted). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id*. (internal quotations and citations omitted).

First, as to the operation plan, Mr. Rodriguez argues in his petition only that the State failed to disclose the plan, without explaining how such information is favorable to him or how prejudice ensued. Doc. 1 at 16. In reply, he elaborates that,

> The operation plan is what put this case into play. It could and should contain certain names of all the officers involved in this case or operation along with what their duty was[.] It should also contain what possession or location they were to be recording[.] In addition the operation plan should have documentation of the alleged operation fund that were to be used during this operation.

Doc. 13 at 19. But again, this summary fails to explain how more detailed information about the operation plan was favorable to Mr. Rodriguez. As to prejudice, Mr. Rodriguez argues in his reply that "he was prejudiced from reviewing the circumstances and nature of activity under the plan and the specifics of the alleged operation fund along with the duty of each officer involved in this operation. The petitioner was also prejudiced from disputing the legality of the operation."

*Id.* This argument fails to explain how the results of the trial would have been different had Mr. Rodriguez received the operations plan, especially in light of the fact that Detective Rascon testified at trial as to the details of the undercover investigation in this case. Doc. 9-2 at 118:11 to 119:18.

Second, as to pictures of the buy-money, Mr. Rodriguez argues that the State produced a photocopy of a photograph that was taken after the execution of the search warrant and that did not have a time stamp. Doc. 1 at 16-17. That is, he argues that "he was prejudice[d] from not receiving an authenticated stored electronic copy of the original photograph [taken] before the operation began." Doc. 13 at 21. As discussed above with ground two, this argument appears to be based on a misunderstanding of the record such that it is unclear if the State withheld anything. Even assuming the State did withhold a photograph that was different from the one it produced, Mr. Rodriguez does not explain how production of the alleged "original" photograph would have impacted the results of his trial, especially given that Detective Rascon testified at trial as to the origins of the buy-money photograph. Doc. 9-1 at 123:21 to 124:17.

Third, Mr. Rodriguez argues that the State produced an incomplete version of Detective Clinginpeel's lapel recording. Doc. 1 at 17. He argues that "he was prejudiced from reviewing Clinginpeel['s] lapel recording . . . to see if Saldana agreed to work of[f] her charges by entrapping others along with Petitioner." Doc. 13 at 22. However, Mr. Rodriguez also explains that such information "was not recorded" and that "Detective Clinginpeel testified under cross-examination at a motion hearing on or about December 12, 2016 that he turned off his lapel because he had some confidential questions for Co-defendant Saldana." Doc. 1 at 17. Thus, it appears there was no further information for the State to have withheld.

Fourth, Mr. Rodriguez argues that the State produced Detective Irwin's lapel recording, but that the disc was blank. Doc. 1 at 18; Doc. 13 at 25. However, Mr. Rodriguez offers no argument to meet his burden of establishing that this lapel recording was favorable to him or that there is a reasonable probability that, had the evidence been disclosed, the result of the trial would have been different.

Lastly, Mr. Rodriguez argues that the State failed to disclose an unredacted version of the audio recording between Detective Rascon and Co-defendant Saldana. Doc. 1 at 19. However, he makes no argument that the redacted information is favorable to him. As to prejudice, he argues that "[t]he lack of providing the un-redacted audio recording prejudice[d] the petitioner from the opportunity of reviewing the recording for indications of inconsistencies and possible exculpatory evidence." Doc. 13 at 18. But this conclusory statement fails to meet his burden of establishing that there is a reasonable probability that, had the unredacted audio been disclosed, the result of the trial would have been different.

In sum, I recommend finding that the ground six claims all fail on the merits.

## RECOMMENDATION

For these reasons, I recommend that the Court construe the "Motion to Clarify and Correct Petitioner (Raul Rodriguez) Federal Habeas Carpus Petition" (Doc. 13) as a reply to the § 2254 petition.

I further recommend denying Mr. Rodriguez's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Doc. 1) in its entirety and dismissing the petition with prejudice. I also recommend that the Court make this decision without holding an evidentiary hearing because the claims can be resolved on the record. *See Anderson v. Attorney General of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005). Lastly, I recommend finding that Mr.

Rodriguez is not entitled to a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

_____
Steven C. Yarbrough
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**